UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21560-Civ-LENARD
MAGISTRATE JUDGE P.A. WHITE

HARSH SHARMA,                          :

    Plaintiff,                     :

v.                                     :        REPORT OF
                                                MAGISTRATE JUDGE
SUSAN JOHNSTON, et al.,                :

    Defendants.                    :
_____

I.  <u>Introduction</u>

    Harsh Sharma, a federal prisoner currently confined at the Jesup Federal Correctional Institution in Jesup, Georgia, filed a <u>pro</u> <u>se</u> civil rights complaint pursuant to 42 U.S.C. §1983 concerning the revocation of his medical licence. The plaintiff is proceeding <i>in forma pauperis</i>. (DE# 12).

    The plaintiff alleges that he was a physician licensed by the Florida Department of Health and Board of Medicine and the defendants conspired to violate his civil rights and deprive him of his property rights when they revoked his license to practice medicine without first providing him with proper notice of the proceeding and without his appearance at a Board of Medicine meeting. <u>See</u> Plaintiff's Criminal Complaint at 1-2. (DE# 1). In his Complaint, the plaintiff names as defendants Susan Johnston; an employee of the State of Florida, Department of Health; an unknown supervisor; the Department of Health, State of Florida; the Florida Board of Medicine; and other unknown defendants. <u>Id</u>. Plaintiff alleges discriminatory motives and seeks reinstatement of his medical license along with compensatory damages in the amount of $250 million and punitive damages in the amount of $250 million. <u>Id</u>.

After review of the complaint for initial screening, service of process was ordered upon Susan Johnston and the Florida Board of Medicine. (DE# 12, 18). Summonses were issued and service of process was accomplished upon defendants Johnston and the Florida Board of Medicine. (DE# 13, 14, 19, 20, 32). Since the State of Florida, Department of Health was immune from suit, it was dismissed from this action. (DE# 11, 15). As to all unknown defendants, they have not been served.

This Cause is now before the Court upon the joint Motion to Dismiss and Motion to Strike Plaintiff's Complaint filed by Defendants Susan Johnston and Florida Board of Medicine pursuant to Fed.R.Civ.P. 12(b)(6). (DE# 26). Since the motion to dismiss is supported with documentation (DE# 26-1, 26-2, 26-3, 26-4), the motion has been construed as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(d). (DE# 30). Sharma was advised of his right to respond to the motion, and he has filed various numerous responsive pleadings in opposition to the motion for summary judgment with supporting exhibits and affidavit. (DE# 30, 31, 40-5, 47, 49-52). The defendants have filed various replies with attached documentary exhibits. (DE# 37, 48, 57, 64, 65).

II. Standard of Review

A. Federal Rule of Civil Procedure 12(b)(6) –
Failure to State a Claim

Fed.R.Civ.P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

2

L.Ed.2d 929 (2007)). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>.

### B.   <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." <u>Fed.R.Civ.P.</u> 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to *Celotex* and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11th Cir. 1990). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572,

1577 (11th Cir.), <u>cert.</u> <u>denied</u>, 112 S.Ct. 913 (1992).  It is the
nonmoving party's burden to come forward with evidence on each
essential element of his claim sufficient to sustain a jury
verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077,
1080 (11th Cir. 1990). The non-moving party's failure to make a
showing that is "sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial," will mandate the entry of
summary judgment. <u>Celotex</u>, 477 U.S. at 322-23.

     "Pro se pleadings are held to a less stringent standard than
pleadings drafted by attorneys and will, therefore, be liberally
construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th
Cir. 1998). However, "a pro se litigant does not escape the
essential burden under summary judgment standards of establishing
that there is a genuine issue as to a fact material to his case in
order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667,
670 (11th Cir.1990). Accordingly, the nonmoving party, even if a
*pro se* prisoner, cannot rely solely on his complaint and other
initial pleadings to contest a motion for summary judgment
supported by evidentiary material, but must respond with
affidavits, depositions, or otherwise to show that there are
material issues of fact which require a trial. <u>Fed.R.Civ.P.</u> 56(e);
<u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11th Cir. 1987); <u>Brown v.</u>
<u>Shinbaum</u>, 828 F.2d 707 (11th Cir. 1987).  If the evidence presented
by the nonmoving party is merely colorable, or is not significantly
probative, summary judgment may be granted. <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. at 249-50; <u>Baldwin County, Alabama v. Purcell</u>
<u>Corp.</u>, 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of
evidence supporting the opposing party's position will not suffice;
there must be enough of a showing that the jury could reasonably
find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th

4

Cir. 1990)(*citing* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11th Cir. 1987), an Order of Instructions (DE# 30) was entered, informing the plaintiff as a <u>pro se</u> litigant of his right to respond to the defendants' motion to dismiss. The Order specifically instructed Plaintiff regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion. As indicated, the plaintiff has filed pleadings in opposition with supporting exhibits.

### III.   <u>Law Pertaining to Qualified Immunity</u>

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001)(quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). The purpose of the qualified immunity defense is to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. ___, ___, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (*quoting* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(*quoting* <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)).

In <u>Saucier</u>, *supra*, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Lee</u>, <u>supra</u> at

1194 (quoting <u>Saucier</u>, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." <u>Lee</u>, <u>supra</u>, 284 F.3d at 1194 (quoting <u>Saucier</u>, <u>supra</u>). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id</u>. <u>See also</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031-33 (11th Cir. 2001)(*en banc*). Following the Supreme Court's decision in *Pearson*, the courts are free to consider the elements in either sequence and to decide the case on the basis of either element that is not demonstrated. <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. at 818. Consequently, the *Saucier* test is no longer mandatory, but is to be used as a guideline when appropriate. <u>Id</u>.

IV. <u>Factual Background</u>[1]

_____

[1]In order to obtain a full and complete history of the facts of this case, it was necessary for the undersigned to not only review the complete record in this case but also its own records in Sharma's related pending civil rights action filed pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). <u>See</u> <u>Sharma v. Drug Enforcement Agency</u>, Case No. 10-20508-Civ-Hoeveler. Sharma's *Bivens* case concerns the revocation of his controlled substance dispensing license and in that case, he names as defendants the Drug Enforcement Administration, the Attorney General of the United States, Drug Enforcement Agent Amber Baginski, "Mike c/o DEA" and "others unknown at this time." <u>Id</u>. On November 10, 2010, the undersigned entered a report recommending the granting of summary judgment as to all remaining defendants. <u>Id</u>. at DE# 89. The undersigned has also reviewed the records in Sharma's criminal case filed in the Middle District of Florida. <u>See</u> <u>United States v. Sharma</u>, Case No. 2:08-cr-00069-JES-SPC. This Court takes judicial notice of its own records and the public records in the criminal case. <u>See</u> <u>Fed.R.Evid</u>. 201. <u>See also</u> <u>Horne v. Potter</u>, 2010 WL 3245149, *2 (11th Cir. 2010)(finding that the district court properly took judicial notice of the documents in Plaintiff's first case, which were public records that were "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." (citations omitted)); <u>Bassett v. NCAA</u>, 528 F.3d 426, 430 (6th Cir. 2008)(stating that in addition to the allegations and exhibits of the complaint, a court may consider public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")(citations omitted). These additional records have been referred to herein when relevant.

In 1996, Harsh Sharma became licensed to practice medicine in the State of Florida. In October 19, 2004, Sharma was registered with the Florida Board of Medicine as a "dispensing practitioner," which authorized him to directly dispense prescription medication to his patients. After receiving a letter from a third-party administrator for self-insured plans expressing concern about claims received for medication prescribed by Sharma, some time in 2005, the Florida Department of Health began investigating Sharma's prescribing practices. During the investigation, the Florida Department of Health and the probable cause panel of the Florida Board of Medicine found that reasonable cause existed to believe that Plaintiff had practiced his profession below that level of care, skill and treatment required, as defined by Chapters 456 and 458, Florida Statutes,[2] and that he was in violation of Florida laws regarding the prescribing of various drugs. See Subpoenas Duces Tecum. (DE# 64-1). See also Administrative Complaint filed in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2004-37110 at ¶9. (DE# 26-3).

During multiple investigations regarding Sharma's practice of medicine, the Department of Health authorized the issuance of three reasonable cause subpoenas for certain patient records upon the request of Defendant Johnston. See Subpoena Duces Tecum issued on December 14, 2005; Subpoena Duces Tecum issued on March 10, 2006; Subpoena Duces Tecum issued on March 26, 2006. (DE# 64-1, 64-3, 64-4, 64-5). Defendant Susan Johnston is an employee of the Florida Department of Health in the Division of Medical Quality Assurance's

---

[2]Chapters 456 and 458, Florida Statutes, pertain to the practice of medicine. Chapter 456 gives the Department of Health the power to regulate medical professionals. Similarly, Chapter 458 is intended to ensure that every physician practicing in the State of Florida meets minimum requirements for safe practice and that any physician who falls below minimum competency or who otherwise presents a danger to the public is prohibited from practicing medicine in the State of Florida.

Investigative Services. (DE# 26-1). The subpoenas were personally served upon Plaintiff on December 15, 2005; March 11, 2006; and March 25, 2006, respectively.[3] (DE# 64-1). The subpoenas were issued and served upon Plaintiff in order for the Florida Department of Health and Board of Medicine to obtain Plaintiff's medical records and reports for patients he had seen in his medical practice in order to resolve the probable cause findings issued by the Department of Health and Board of Medicine. Id. On or about January 23, 2006, Sharma sent a letter to Dr. M. Rony Francois, M.D., Secretary, Department of Health, which was the subject of Subpoena No. 0045737. (DE# 64-2). Sharma specifically addressed the claims made against him, stating that they were meritless. Id. He provided a post office box in Naples, Florida as a return address. Id. Thereafter, Plaintiff refused all contact with the Department of Health.

As a result of the investigations, three Administrative Complaints were filed against Sharma. See Department of Health v. Sharma, State of Florida, Department of Health Case No. 2004-37110; Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-08226; Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-70115. (DE# 26-3, 26-4, 64-5). The Florida Department of Health filed the first Administrative Complaint before the Florida Board of Medicine

---

[3]Attached as Composite Exhibit A to DE# 64 are copies of Subpoena No. 0044148 (Complaint No. 2004-37110), Subpoena No. 0045733 (Complaint No. 2005-08226), and Subpoena No. 0045737 (Complaint No. 2206-70115) issued by Defendant Department of Health, and each subpoena shows proof of personal service upon Plaintiff. (DE# 64-1). It appears from the record that Department of Health investigators had information that service of the reasonable cause subpoenas on Sharma at his address of record would prove unsuccessful, they therefore attempted service at his office address. See Appellee's Answer Brief at 2 filed in the Florida Third District Court of Appeal in Sharma v. Florida Dept. Of Health, Board of Medicine, No. 3D07-3453. (DE# 64-6). Although service was not accomplished at Sharma's office address, service was ultimately accomplished when Sharma agreed to meet the investigators at a local restaurant. Id. at 2-3.

against Sharma on May 1, 2006, charging Sharma with violating Florida laws regarding the prescribing of various drugs and failing to comply with a lawfully issued subpoena. See Administrative Complaint at ¶¶ at 1-31. (DE# 26-3). Disciplinary action was sought in the form of one or more of the following penalties: permanent revocation or suspension of Sharma's license, restriction of practice, imposition of an administrative fine, issuance of a reprimand, placement of Sharma on probation, corrective action, refund of fees billed or collected, remedial education, etc. Id. at ¶31. Sharma was advised that he had the right to request a disciplinary action hearing, to be represented by counsel, and to present evidence and argument the hearing. Id. at 12.

A second Administrative Complaint was filed against Sharma on November 1, 2006. See Administrative Complaint filed in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-70115. (DE# 64-5). The Complaint alleged that Sharma had failed to testify truthfully under oath about the status of his license to practice medicine in the State of New York during a deposition taken in a medical malpractice action relating to his medical license in Florida in violation of Chapter 837, Florida Statutes and Fla.Stat. §458.331(1)(g). Id. at 2-4. Various penalties were sought which included permanent revocation or suspension of Sharma's medical license. Id. at 5. The Complaint advised him of his rights in the disciplinary proceeding. Id. at 6.

A third Administrative Complaint was filed against Sharma on April 25, 2007. See Administrative Complaint filed in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-08226. (DE# 26-4). The Complaint indicated that a joint undercover investigation was conducted between August 30, 2001, and April 12, 2002, by the United States Department of Justice, Drug

Enforcement Agency and an Investigator from the Collier County Sheriff's Office Id. at ¶5-22. The Special Agent and Investigator first posed as patients and the Florida Department of Health then personally served Sharma on April 3, 2006, requiring him to provide his medical records for the two "patients." Id. at ¶¶6, 25. Sharma failed to produce the records or comply with the subpoena in any way. Id. Sharma was charged with inappropriately prescribing controlled substances in violation of Florida law. Id. at ¶¶29-33. He was also charged with failing to practice medicine with the required appropriate care provided by Florida regulations and laws and failure to maintain proper medical records. Id. at ¶¶34-37, 38-41. He was additionally charged with improperly failing to comply with a lawfully issued subpoena of the Florida Department of Health. Id. at ¶¶42-45. Again, various penalties were sought, including permanent revocation or suspension of Sharma's license. Id. at ¶49. The Complaint advised him of his rights in the disciplinary proceeding. Id. at 21.

Service of the Administrative Complaints was attempted by (1) certified mail, (2) by personal service and (3) by service through the Collier County Sheriff's Office. See Motions for Determination of Waiver and for Final Order by Hearing Not Involving Disputed Issues of Material Fact and exhibits attached thereto. (DE# 26-3, 57-1, 64-3, 64-4, 64-5). No response to the Administrative Complaints in Case Nos. 2004-37110, 2005-08226 and 2005-70115 was received.[4] Id. When service was not accomplished by the means indicated, a Notice of Action giving Plaintiff until April 2, 2007, to respond to the Administrative Complaints was published numerous times in the Naples Daily News. Id. Sharma was, therefore, served

_____

[4]Larry McPherson, Custodian of Records, Florida Board of Medicine, and the Custodian of Record, Department of Health Clerk's Office, filed Affidavits in the administrative proceedings indicating that Sharma had filed no responses to the Complaints. See DE# 64-3, 64-4, 64-5.

with the Administrative Complaints by publication. <u>See</u> Final Order entered on June 26, 2007, in <u>Department of Health v. Sharma</u>, State of Florida, Department of Health Case Nos. 2004-37110, 2005-08226, 2005-70115. (DE# 26-3, 26-4, 64-5). Sharma, however, failed to submit an Election of Rights or otherwise dispute the facts or respond in any way to the Complaints, and he thereby waived his right to a hearing pursuant to applicable Florida law. <u>Id</u>. at 1.

By separate motions filed on or about April 25, 2007, in Case Nos. 2004-37110 and 2005-08226, the Florida Department of Health sought the entry of a final order, assessing costs against Sharma in the amount of $5,269.52 and $2,556.51, respectively. <u>See</u> Motion to Assess Costs in Accordance with Section 456.072(4). (DE# 26-3, 26-4). Sharma was advised in the motions that at its next regularly scheduled meeting, the Board of Medicine was to consider the disciplinary action and that it would then enter a Final Order. <u>Id</u>. at ¶1. Sharma was mailed a copy of the motions at his address of record and the physical address of his practice. <u>Id</u>. Costs were also sought in Case No. 2005-70115 in the amount of $2,331.18. <u>See</u> DE# 64-5.

Sharma did not personally attend the hearings in any of the three cases and, therefore, the facts were not in dispute. <u>See</u> Final Order entered on June 26, 2007, in <u>Department of Health v. Sharma</u>, State of Florida, Department of Health Case No. 2004-37110; Final Order entered on June 26, 2007, in <u>Department of Health v. Sharma</u>, State of Florida, Department of Health Case No. 2005-08226; <u>See</u> Final Order entered on June 26, 2007, in <u>Department of Health v. Sharma</u>, State of Florida, Department of Health Case No. 2005-70115. Consequently, the Florida Board of Medicine approved and adopted the facts set forth in the Administrative Complaints and found that the violations alleged in the Complaints warranted

disciplinary action. Id. By Final Order entered on June 26, 2007, in Case No. 2004-37110, Sharma was required to pay an administrative fee of $40,000.00 and costs in the amount of $5,269.52. See Final Order entered on June 26, 2007, in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2004-37110. Further, his license to practice medicine in the State of Florida was revoked. Id.

By Final Order entered on June 26, 2007, in Case No. 2005-70115, Sharma was reprimanded, ordered to pay an administrative fine and costs and ordered to complete five hours of continuing medical education. Id. at 2-3. See Final Order entered on June 26, 2007, in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-70115. (DE# 64-5). By Final Order entered on June 26, 2007, in Case No. 2005-08226, Sharma was required to pay an administrative fee of $40,000.00 and costs in the amount of $2,556.51. See Final Order entered on June 26, 2007, in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-08226. His license to practice medicine in the State of Florida was once again revoked. Id.

Sharma was advised of his right to seek judicial review of the Final Orders and, on June 27, 2007, copies of the Final Orders were mailed to him at his address of record, a post office box, and the address listed on his practice profile, a physical address. See Final Order entered on June 26, 2007, in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2004-37110; Final Order entered on June 26, 2007, in Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-08226; Department of Health v. Sharma, State of Florida, Department of Health Case No. 2005-70115. (DE# 26-3, 26-4, 64-5). Sharma retained counsel and took an appeal from the rulings, arguing in part that

service by publication of the administrative complaints was not proper. (DE# 64-6). <u>See also</u> Report and Recommendation at 12-13 entered on November 20, 2008, in <u>United States v. Sharma</u>, No. 08-cr-00069-29SCP at DE# 28. The appeals were consolidated and on March 18, 2009, in a decision without written opinion, the Florida Second District Court of Appeal affirmed the rulings of the Florida Board of Medicine. <u>See</u> <u>Sharma v. Florida Dept. Of Health, Board of Medicine</u>, 16 So.3d 140 (Fla. 2d DCA 2009)(table).

In the meanwhile, on or about April 1, 2008, Amber Baginski, a detective with the Naples Police Department and assigned to the drug enforcement task force, was contacted by defendant Florida Department of Health Investigator Susan Johnston and was informed that Sharma had been a former physician and that he was illegally obtaining controlled substances by mail. <u>See</u> Report and Recommendation at 4 entered on November 20, 2008, in <u>United States v. Sharma</u>, No. 08-cr-00069-29SCP at DE# 73. Task Force Agent Baginski ("TFA Baginski") conducted an investigation into the alleged illegal activities during which she learned that Sharma's medical license had been permanently revoked on June 26, 2007. <u>Id</u>. at 4-5. TFA Baginski obtained records from the Drug Enforcement Administration regarding Sharma's DEA registration number. <u>Id</u>. She also ultimately arranged for a controlled delivery and she obtained an Anticipatory Search warrant for an anticipated delivery. <u>Id</u>. at 5-6. Sharma was arrested after he retrieved the package on April 9, 2008. <u>Id</u>. at 6. Subsequently, TFA Baginski prepared and obtained a search warrant for the property where Sharma resided and the house was searched and various items seized. <u>Id</u>. at 10-11. In her affidavit, TFA Baginski alleged that Sharma was obtaining controlled substances by fraud by presenting himself as a licensed physician. <u>Id</u>. at 11.

By second superseding indictment returned by the grand jury on January 7, 2009, Sharma was charged in the United States District Court for the Middle District of Florida, Fort Myers Division, with various narcotics offenses. See Second Superseding Indictment filed in United States v. Sharma, 2:08-cr-00069-JES-SPC.[5] The offenses took place on October 13 and 19, 2007 (Counts One and Two); March 21, 2008 (Count Three) and April 8, 9, and 11, 2008 (Counts Four through Thirteen). Id. Sharma was arrested on the charges on January 12, 2009. See Warrant for Arrest.[6] Approximately five months later, on June 23, 2009, Sharma entered into an extensive negotiated written plea agreement with the government whereby he agreed to change his earlier entered pleas of not guilty to guilty to certain crimes charged in the Second Superseding Indictment. See Plea Agreement. (DE# 48-1). Sharma acknowledged in the written plea agreement that he was entering the agreement and pleading guilty intelligently freely and voluntarily and he admitted that he was in fact guilty of the offenses for which he was pleading guilty. Id. at 15-16, 17.

---

[5]Specifically, Sharma was charged with knowing and intentional distribution of a controlled substance, to-wit, hydrocodone in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(D), and 841(b)(1)(D) (Counts One, Two, Three, and Four); possession with intent to distribute a controlled substance, to-wit, hydrocodone in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D) (Counts Five and Nine); possession with intent to distribute a controlled substance, to-wit, diazepam in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D)(2) (Counts Six and Eleven); possession with intent to distribute a controlled substance, to-wit, alprazolam in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D)(2) (Counts Seven and Twelve); knowingly and intentionally acquiring and obtaining possession of certain controlled substances, to-wit, hydrocodone, diazepam and alprazolam by misrepresentation, fraud, deception, and subterfuge, in violation of 21 U.S.C. §§843(a)(3) and 843(d)(1) (Count Eight); possession with intent to distribute a controlled substance, to-wit, phendimetrazine tartrate in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D) (Count Ten); and possession with intent to distribute a controlled substance, to-wit, propoxyhene in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(D)(2) (Count Thirteen). A copy of the Second Superseding Indictment can be found at DE# 22-1 in Sharma v. Drug Enforcement Administration, Case No. 10-20508-Civ-Hoeveler.

[6]A copy of the Arrest Warrant can be found at DE# 22-2 in Sharma v. Drug Enforcement Administration, Case No. 10-20508-Civ-Hoeveler.

The plea agreement contained a factual basis for the plea, and Sharma admitted that the facts were true and that the United States would have been able to prove those specific facts and others beyond a reasonable doubt, if the case had proceeded to trial. Id. at 17. Pertinent to the instant civil action, the Plea Agreement set forth the following set of facts regarding the revocation of Sharma's Medical License and DEA Registration Number:

> In 1996, defendant Harsh Sharma ("Sharma") became licensed to practice medicine in Florida. From October 19, 2004, through January 31, 2007, Sharma was also registered with the Florida Board of Medicine as a "dispensing practitioner," which authorized him to directly dispense prescription medication to his patients. Because Sharma had a controlled substance Registration Number (#BS4579679) with the Drug Enforcement Administration ("DEA") during this time period, he was also permitted to use his Florida dispensing license to dispense certain types of controlled substances directly to his patients in Florida. However, Sharma intentionally allowed his dispensing license to expire on January 31, 2007. Accordingly, as of February 1, 2007, Sharma was not permitted to directly dispense prescription medication — - including controlled substances-for a fee to his patients.
>
> On June 26, 2007, the Florida Board of Medicine permanently revoked Sharma's Florida medical license (#ME0071440) for violations of Florida Statutes §§458.331(1)(q), 458.331(1)(t), 458.331(1)(m), 458.331(1)(x), and 458.331(1)(g), in Department of Health case #2005-08226. Sharma received a copy of this Final Order of Revocation which was sent to his post office box— P.O. Box 11761, Naples, Florida 34101. After the Florida Board of Medicine revoked Sharma's medical license on June 26, 2007, Sharma no longer had the legal authority to possess controlled substances not intended for personal use. On February 27, 2008, the DEA's Diversion Office rescinded Sharma's DEA Registration Number.

Id. at 17-18.

Pursuant to the negotiated plea agreement, on June 23, 2009, Sharma appeared before the United States District Court for the Middle District of Florida, Fort Myers, Division, and he entered pleas of guilty as to Counts One, Five and Nine of the Second Superseding Indictment, which were accepted by the Court. See

Transcript of Change of Plea Hearing conducted on June 23, 2009, in United States v. Sharma, No. 2:08-Cr-69-FTM-29SPC. (DE# 48-2).  See also Clerk's Minutes/Change of Plea.[7] On September 15, 2009, he was adjudicated guilty of the offenses and sentenced to a total term of imprisonment of sixty months to be followed by a three-year term of supervised release.[8] See Clerk's Minutes/Sentencing; Judgment; Judgment in a Criminal Case.[9]

## V. Discussion

Defendants Johnston and the Florida Board of Medicine have filed a joint motion to dismiss with supporting exhibits, arguing that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for the following reasons: (1) Plaintiff has failed to state a claim; (2) based upon the Final Orders revoking Plaintiff's license to practice medicine in Florida, the principles of res judicata and collateral estoppel require dismissal; (3) the defendants are entitled to Eleventh Amendment immunity; (4) defendant Johnston is entitled to qualified immunity; and (5) the complaint does not comply with Fla.R.Civ.P. 8(a)(2), 8(d)(1), and 10(b). (DE# 26). The defendants further assert that the claims should be stricken pursuant to Fla.R.Civ.P. 12(f), because the claims are based on scandalous and defamatory allegations which amount to nothing more than unsupported theories of an alleged conspiracy. Id.

---

[7]A copy of the Clerk's Minutes/Change of Plea can be found at DE# 22-4 in Sharma v. Drug Enforcement Administration, Case No. 10-20508-Civ-Hoeveler.

[8]It is noted that records maintained by the Federal Bureau of Prisons reviewed this date, see www.bop.gov, indicate that Sharma has a projected release date of August 16, 2012. See http://www.bop.gov.

[9]Copies of the Clerk's Minutes/Sentencing; Judgment; Judgment in a Criminal Case can be found at DE# 22-5, 22-6 in Sharma v. Drug Enforcement Administration, Case No. 10-20508-Civ-Hoeveler.

Sharma has filed pleadings in opposition to the motion for summary judgment with supporting exhibits and affidavit (DE# 30, 31, 40-5, 47, 49-52),[10] and the defendants have filed various replies with attached documentary exhibits. (DE# 37, 48, 57, 64, 65). After full and careful consideration of the defendants' motion, as supplemented, and responses thereto, as well as additional records that this Court has taken judicial notice, the motion to dismiss, treated as a motion for summary judgment, should be granted and the case dismissed with prejudice for the reasons expressed below.[11]

A. Claims against Defendants in their official capacities

Defendant Florida Board of Medicine and Defendant Johnston, when sued in her official capacity, assert that they should be granted an award of summary judgment, because this Court lacks subject matter jurisdiction. Specifically, these defendants argue that Sharma fails to state a 1983-claim because Sharma's official capacity claim is precluded under the doctrine of Eleventh Amendment immunity.

In this case, as maintained by the defendants, Eleventh Amendment immunity applies to bar Sharma's claim for money damages and injunctive relief against the Florida Board of Medicine and Johnston in her official capacities. The Eleventh Amendment "protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), *cert. denied*, 540 U.S. 1107, 124 S.Ct. 1061, 157 L.Ed.2d 892 (2004). *Manders* identified four factors to be considered in determining whether a defendant is an "arm of the state" for

---

[10]

[11]The alternative grounds asserted by the defendants need not be addressed in that the reasons stated herein are dispositive of this case.

Eleventh Amendment purposes: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.

The Florida Board of Medicine was created within the Florida Department of Health. <u>See</u> <u>Fla.Stat</u>. §§20.43(3)(g)2., 458.307. The Florida Board of Medicine establishes licensing regulations, provides certification for physicians and physician assistants, and has the authority to impose penalties for licensing violations.[12] <u>See e.g.</u>, <u>Fla.Stat</u>. §458.309. The Board of Medicine consists of physicians and lay members appointed by the Governor of Florida confirmed by the Florida Senate. <u>Fla.Stat</u>. §458.307. The Investigative Services Unit (ISU) investigates complaints against health care practitioners and facilities regulated by the Florida Department of Health, an executive agency.[13] ISU functions as the investigative arm of the division. ISU includes a staff of professional investigators who conduct interviews, collect documents and evidence, prepare investigative reports for the Prosecution Services Unit and serve subpoenas and official orders of the department. When the complaint is assigned to an investigator, the complainant will be contacted and given the opportunity to provide additional information. Generally, the investigative steps include the following: obtaining medical records, documentation and evidence related to the complaint; locating and interviewing the complainant, the patient, the subject and any witnesses; drafting and serving subpoenas for necessary

---

[12]The information regarding the Florida Board of Medicine and Florida Department of Health have been obtained from the following website: http://www.flgov.com; http://www.doh.state.fl.us.

[13]Information regarding the Investigative Services Unit can be found at the Florida Department of Health's website. <u>See</u> http://www.doh.state.fl.us/mqa/enforcement/enforce_csu.html.

information. After the information is collected and interviews are conducted, the investigator will write an investigative report. The report is forwarded to the department's attorneys for legal review. At the time of the subject action, Johnston was employed by the Division of Medical Quality Assurance's Investigative Services division of the Florida Department of Health. (DE# 26-1).

The State of Florida is entitled to Eleventh Amendment immunity. Gamble v Fla. Dept. Of Health and Rehabilitation Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986)(holding that absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court). Since the Florida Board of Medicine is a board within the Florida Department of Health, which is an arm of the State of Florida, it too is entitled to Eleventh Amendment immunity. See Schopler v. Bliss, 903 F.2d 1379 (11th Cir. 1990)(holding that Florida Department of Professional Regulation, and its Board of Dentistry, were absolutely immune from suit in federal court, absent explicit waiver of state's Eleventh Amendment immunity). See also Wight v. Board of Dental Examiners, 1997 WL 151411, *1 (9th Cir. 1997)(holding that Board of Dental Examiners was entitled to Eleventh Amendment immunity)(unpublished). Employees of the Florida Department of Health and Florida Board of Medicine when sued in their official capacities are also immune from suit. Hafer v. Melo, 502 U.S. 21, 24-25, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991)(holding that a defendant official acting in his official capacity receives the same immunity as the government agency to which he belongs). Thus, the Florida Board of Medicine and employees of the Florida Department of Health, when sued in their official capacities, are arms of the state for

Eleventh Amendment purposes and therefore enjoy immunity from liability on Sharma's §1983 claims, both legal and equitable.

   B. <u>Claims against Defendants in their individual capacity</u>

   Sharma alleges in this 42 U.S.C. §1983 action that Defendant Johnston and/or the Florida Board of Medicine deprived him of his property rights (i.e., his license to practice medicine) without due process of law in the state proceedings in which his license to practice medicine was revoked in violation of his rights under the Fifth Amendment and Fourteenth Amendments. Procedural due process requires notice and a meaningful opportunity to be heard. <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It must reasonably convey all required information and permit a reasonable amount of time for response. <u>Id</u>. The test for procedural due process claims under 42 U.S.C. §1983 requires that the plaintiff show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." <u>Grayden v. Rhodes</u>, 345 F.3d 1225, 1232 (11th Cir. 2003). The question of what process is constitutionally adequate is resolved by application of the test articulated by the Supreme Court of the United States in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). <u>See</u> <u>Grayden</u>, 345 F.3d at 1232-33. The *Mathews* test

> requires consideration of three distinct factors: First, the
> private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any,
> of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The Supreme Court has held that a professional license is property and is protected by the Constitution. See <u>Schware v. Bd. of Bar Examiners</u>, 353 U.S. 232, 238-39, 77 S.Ct. 752, 755-56, 1 L.Ed.2d 796 (1957)(stating that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."). In Florida, the courts have similarly held that the right to practice medicine is a valuable property right protected by the due process clause. <u>Florida Medical Ass'n v. Department of Professional Regulation</u>, 426 So.2d 1112, 1116 (Fla. 1st DCA 1983), *quoting*, <u>State Board of Medical Examiners v. Rogers</u>, 387 So.2d 937 (Fla. 1980). The Florida Supreme Court in *Rogers* stated:

> Although the State has the power to regulate the practice of medicine for the benefit of the public health and welfare, this power is not unrestricted. The regulations imposed must be reasonably related to the public health and welfare and must not amount to an arbitrary or unreasonable interference *with the right to practice one's profession which is a valuable property right protected by the due process clause*. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889).(emphasis supplied).

<u>Rogers</u>, 387 So.2d at 939.

While the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, that right is nevertheless subject to reasonable government regulation. See <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-292, 119 S.Ct. 1292, 1295-1296 (1999) and cases cited therein. For example, in Florida, Chapters 456 and 458, <u>Fla.Stat</u>. are concerned with the protection of the public by insuring that persons engaged

in the various health care professions are qualified to do so.[14] These and other statutes pertaining to the health care field (and the various boards acting under authority of the statutes), also serve the purpose of delineating, to a great extent, the relative rights and privileges of health care professionals. In Florida, the Board of Medicine has control of regulating the practice of medicine and the various grounds for disciplinary action carried out by the Florida Board of Medicine and Department of Health are set forth in <u>Fla.Stat</u>. §458.331. In sum, a State cannot exclude a person from the practice of medicine or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. <u>Id</u>. Accordingly, Sharma could not be deprived of his license to practice medicine without due process. <u>See</u> <u>Mishler v. Nevada State Bd. of Medical Examiners</u>, 896 F.2d 408, 410 (9th Cir. 1990).

The undisputed material facts of this case indicate that Sharma was personally served with the subpoenas issued by the Department of Health, and was therefore personally aware of the investigation conducted by the Department of Health and Board of Medicine. His letter to Department of Health's Secretary, Dr. M. Rony Francois, M.D., received on January 23, 2006, also indicates his awareness of the investigation. Multiple methods were employed to notify Sharma of the filing of the Administrative Complaint and

---

[14]For example, <u>Fla.Stat</u>. §458.301 states:

The Legislature recognizes that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners. The Legislature finds further that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety. The primary legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.

motions. Further, Sharm he admitted knowledge of the disciplinary and revocation proceedings during his criminal case. In the executed plea agreement, Sharma at the least acknowledged that he was aware of the orders revoking his medical license and that he had received a copy of the Final Order of Revocation.  In fact, Sharma retained counsel and filed appeals from the final orders to the Florida Second District Court of Appeal, where he unsuccessfully argued that he had not been provided with proper notice of the proceedings.

Thus, even were the Court to conclude that Plaintiff's §1983 claims survived the pleading requirements of *Twombly* and *Iqbal*, an award of summary judgment on behalf of Defendant Johnston and Board of Medicine is nonetheless appropriate here based upon the undisputed material facts of this case, which are partly based upon public records which this Court can take judicial notice. As indicated by the above review of the state administrative proceedings and the subsequent appeal in the state court system, the state afforded Sharma due process protections during the proceedings precipitating the revocation of his license to practice medicine. Plaintiff has made no showing that the process provided by the State of Florida was inadequate, or that any alleged erroneous deprivation of a property interest by the Board of Medicine and/or Department of Health could not be remedied on appeal to the state courts.

Plaintiff has suffered no procedural due process violation "unless and until the state refuses to provide due process." McKinney v. Pate, 20 F.3d 1550, 1562 (11th Cir. 1994)(citation omitted). Plaintiff cannot complain of a procedural due process violation actionable under section 1983 unless the State of Florida "refuse[d] to make available a means to remedy the deprivation."

Id. See also Cotton v. Jackson, 216 F.3d 1328, 1330-31 (11th Cir. 2000)("This rule ... recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.")(citation omitted). Such is not the case here. Plaintiff has stated no plausible procedural due process violation arising from the revocation of his medical license. Consequently, Sharma's failure to properly avail himself of his administrative remedies to contest the revocation proceedings, which appears intentional from the record here, having notice of the proceedings, renders him unable to proceed with the instant civil rights action. See Wight v. Board of Dental Examiners, 1997 WL 151411 at *1 (in §1983 action, affirming award of summary judgment in favor of California Board of Dental Examiners after concluding that Plaintiff was provided with sufficient due process during the proceedings to revoke his license to practice dentistry).

Construing Sharma's Complaint liberally, Sharma is also apparently alleging that his substantive due process rights were violated by the defendants in connection with the investigation and disciplinary proceedings, resulting in the revocation of his medical license. Even assuming, but not finding, that Sharma has a substantive due process right in his medical license,[15] no violation occurred here. Substantive due process "bars certain arbitrary,

---

[15]The Courts have held that a substantive due process claim predicated on the denial of a state-defined property right does not state a viable substantive due process claim. The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11 Cir. 1994), quoting, Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). See also Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003)(stating that substantive due process protects fundamental rights protected by the Constitution, which does not include state-created property interests).

wrongful government actions regardless of the fairness of the procedures used to implement them." <u>Zinermon v. Burch</u>, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)(citation and internal quotation marks omitted). Cases addressing specific acts of governmental officers "repeatedly emphasize[ ] that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). To violate substantive due process, an "abuse of power" must "shock[ ] the conscience." <u>Id</u>.

Plaintiff alleges in his Complaint that Defendant Johnston violated his substantive due process rights, because she acted vindictively and was biased and prejudiced against him. He alleges that due to these improper motives, she lied and falsified statements to the Department of Health and Board of Medicine. From the record before this Court and records from which this Court can take judicial notice, there is no indication whatever that Defendant Johnston engaged in any sort of improper conduct that would violate Sharma's substantive due process rights. The undisputed material facts indicate that she did nothing more than conduct a typical investigation of possible violations of Florida laws regarding the practice of medicine. While Defendant Johnston may have wanted Sharma to have his medical license revoked and criminal charges brought in order to end the unlawful and dangerous activities, her alleged conduct does not rise to the egregious level necessary to violate substantive due process. <u>See e.g.</u>, <u>Edwards v. Dunn</u>, 2010 WL 1644134 (N.D.Tex. 2010)(dismissing *Bivens* complaint after finding no substantive or procedural due process violation in connection with temporary suspension of DEA registration); <u>United Prescription</u>, 2006 WL 3804728, *3-5 (finding that the alleged conduct may show "administrative arm-twisting" to

obtain voluntary compliance with DEA directives in a highly regulated industry, but Plaintiff has not alleged that Defendants' "jawboning tactics crossed the line toward a cognizable constitutional violation, much less violated one.").

If Sharma is also raising a taking clause claim under the Fifth Amendment's Takings Clause, which provides that private property shall not be taken for public use without just compensation, see U.S. CONST. amend. V., he is not entitled to relief in that he has failed to state a claim cognizable under the Fifth Amendment. The Fifth Amendment prohibits the taking of private property "for public use, without just compensation"-a condition made applicable to the States by the Fourteenth Amendment. U.S. Const. amend. V; Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 2457, 150 L.Ed.2d 592 (2001)(noting that the Fourteenth Amendment made the Takings Clause applicable to the States). Here, state law gives the Department of Health and Board of Medicine broad discretion to issue a medical license, regulate the profession, and revoke a medical license if it determines the revocation would be in the public interest. See Florida Medical Ass'n v. Department of Professional Regulation, 426 So.2d 1112, 1117 (1st DCA 1983)(stating that, "both Chapters 463 and 458 [Florida Statutes] are concerned with the protection of the public by insuring that persons engaged in the various health care professions are qualified to do so. These and other statutes pertaining to the health care field (and the various boards acting under authority of the statutes), also serve the purpose of delineating, to a great extent, the relative rights and privileges of health care professionals." [footnote omitted]).

Thus, the right to practice medicine in Florida amounts to a privilege and can be suspended or revoked for violations of state

laws and regulations. Accordingly, a properly revoked medical license does not amount to a violation of the Takings Clause, as is the case here. See generally Chance Management, Inc. v. South Dakota, 97 F.3d 1107, 1119-1120 (8 Cir. 1996)("Public licensure is not generally contractual in nature: a license neither grants the licensee a property right nor creates a mutual obligation."); Harris v. Gadd, 2008 WL 176384, *4 (E.D.Ark. 2008)(finding in civil rights action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) no cognizable claim under the Fifth Amendment in that licenses to distribute controlled substances were not constitutionally protected property interests under takings clause of Fifth Amendment and further finding no procedural due process violation in connection with licenses in that there were no facts indicating that Plaintiff was denied notice, a hearing, or any other pre-deprivation protections in connection with the relinquishment of his DEA license and state application for state license).

Here there is no dispute that the investigation and administrative proceedings brought against Plaintiff with regard to his medical license were well-founded and within the statutory discretion of Defendant Johnston. Thus, even if the plaintiff has alleged a violation of a clearly established right, which the undersigned does not believe, Defendant Johnston is alternatively entitled to qualified immunity. A reasonable investigator would not have clearly understood that the investigator was violating the Fifth and/or Fourteenth Amendment rights of physician under the circumstances here. See Saucier, 533 U.S. at 205, 121 S.Ct. 2151.

VI. Conclusion

Based upon the foregoing, Plaintiff's constitutional claims against all defendants in their official and individual capacities

should be summarily dismissed in that the pleadings and supporting exhibits, together with records that the Court has taken judicial notice, show that there is no genuine issue as to any material fact, and that the defendants are entitled to judgment as a matter of law.[16] See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). See also Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); Coleman v. Smith, 828 F.2d 714 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

It is therefore recommended that: (1) the defendants' motion to dismiss (DE# 26), treated as a motion for summary judgment, be GRANTED; (2) Plaintiff's Motion in Opposition (DE# 40) be DENIED; and (3) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 13th day of December, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Harsh Sharma, Pro Se
     Reg.No. 34507-018
     FCI Jesup
     2680 301 SOUTH
     Jesup, GA  31599

---

[16]It is noted that Plaintiff's pleadings in opposition to defendant's motion to dismiss essentially consist of conclusory allegations which merely restate the allegations of the complaint and are insufficient to oppose a motion for summary judgment. See generally Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment ...."). Further, Sharma has not responded with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial.

28

James A. Weinkle, AUSA
U.S. Attorney's Office
99 N.E. 4th Street, Suite 300
Miami, FL 33132